# Illinois Official Reports

## Appellate Court

***People v. Brown*, 2014 IL App (2d) 121167**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERRICK BROWN, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-1167 |
| Filed<br>Rehearing denied | May 30, 2014<br>July 17,2 014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal, defendant's conviction for first-degree murder was upheld over his contention that the trial erred in denying his motion to quash a search warrant for evidence related to the murder and suppress that evidence, notwithstanding defendant's argument that the warrant was based on hearsay information provided by his estranged wife's attorney, since the individuals who provided information to the wife's attorney were identified by name, the police officer involved knew the attorney, the evidence supported the inference that the officer corroborated the information, the question facing the magistrate presented with the complaint for the warrant was not whether defendant committed a crime, but whether a practical and commonsense assessment of the circumstances showed a fair or reasonable probability that evidence of a crime would be found in a particular place, and in defendant's case, the motion to quash was properly denied. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 09-CF-2922; the Hon. Timothy Q. Sheldon, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Thomas A. Lilien and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Jay Paul Hoffmann, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Hutchinson and Hudson concurred in the judgment and opinion.

# OPINION

¶ 1    Defendant, Errick Brown, was convicted of first-degree murder (720 ILCS 5/9-1(a)(2) (West 2008)) and sentenced to 55 years' imprisonment. On appeal, defendant argues that the court erred in denying his motion to quash a search warrant and suppress evidence because the warrant was not supported by probable cause. For the following reasons, we affirm.

¶ 2                                  I. BACKGROUND
¶ 3                               A. The Search Warrant
¶ 4    The affidavit for a search warrant was completed by Detective John H. Spencer. Spencer attested that he was employed full time with the Carpentersville police department, had been a police officer for 16 years, had specialized training in homicide investigations, and had been the lead detective in numerous death investigations.

¶ 5    Spencer attested that, on October 10, 2009, he was notified by dispatch that a person named Joseph L. Vonner had been shot at a residence at 126 Amarillo Drive in Carpentersville. Vonner was pronounced dead at the hospital. Five days later, on October 15, 2009:

"I have [*sic*] received a call from Tim Mahoney, a well[-]known Carpentersville attorney, that Barbara Nichols had contacted his office. He said that Barbara could provide more specific detail regarding her estranged husband's involvement in this murder. Her husband[, *i.e.*, defendant,] is the suspect in Joseph L. Vonner's murder. According to Nichols' attorney, Nichols and [defendant] have been separated for several years but are still married. They no longer live together and [defendant] rents a room at the 126 Amarillo Drive residence."

¶ 6    Spencer next attested that, on October 17, 2009, he again spoke with Mahoney. Specifically:

"[Mahoney] told me that Barbara is currently in a relationship with Mr. Wilbert R. Parker, a client of his. He told me that Barbara and Wilbert were at [the] 126 Amarillo

- 2 -

Drive residence with [defendant] for several hours before the shooting. They were present when the shooting occurred, as well as after the shooting occurred. They have informed Mahoney that [defendant] removed a handgun from the Toyota in the garage at 126 Amarillo Drive just hours before the murder was committed. The car is a 1986 Toyota, grey in color and bearing an Illinois registration of 591 3440 [and] is registered to Barbara Nichols and [defendant]. The Toyota has a vehicle identification number of JT2SV16H9G0515191 [and] is currently in the garage of 126 Amarillo Drive [and] appears not to have been driven in an extended period of time."

¶ 7 Handwritten near the end of the affidavit was the sentence, "It should also be noted that Mahoney also told me that there has been firearm ammunition in the 1986 Toyota in the past." In conclusion, Spencer attested that he believed that a search of the 1986 Toyota would result in the seizure of "listed items."

¶ 8 The complaint listed as items that would, if found, be seized: any weapons or ammunition that might have been used to shoot or harm the victim; any evidence that might indicate or suggest the probable cause of the victim's death; and any items or indicia of ownership and/or residency. The complaint specifically described the house and garage located at 126 Amarillo Drive, Carpentersville, and described the vehicle as "a 1986 Toyota 4 door, grey in color, with Illinois registration 591 3440. The vehicle registers to Barbara Nichols and [defendant]. The vehicle identification number on the vehicle is JT2SV16H9G0515191."

¶ 9 On October 17, 2009, Judge Patricia Piper Golden issued the search warrant. The search was executed that same day. In the engine compartment of the Toyota, police found a case for a Colt .45-caliber handgun, a box containing .45-caliber ammunition (with 20 bullets apparently missing), a holster, and an owner's manual for a .45-caliber handgun. In the car's interior, police found documents addressed to defendant (one from the Illinois State Police, denying his request for a firearm owner's identification (FOID) card). On January 6, 2010, defendant turned himself in to the Chicago police department.

¶ 10 B. Hearing on Motion to Quash and Suppress

¶ 11 In November 2010, defendant moved to quash the warrant and suppress the evidence seized from inside the vehicle. On January 5, 2011, the motion was heard before Judge Karen Simpson.

¶ 12 Defendant argued that probable cause for the warrant was lacking because the information contained in the affidavit attached to the complaint was not based on Spencer's conversations or interviews with Nichols or Parker. Rather, the information forming the basis of the affidavit came from Mahoney, an attorney, passing along "barebone" conclusory allegations he learned from his clients. Defendant argued that, while an attorney has an ethical obligation to refrain from submitting false information to law enforcement, the attorney *also* has an ethical obligation to zealously advocate for his or her client. As such, defendant argued, in contacting the police, Mahoney could "filter" the information provided by his clients and present it in a manner most advantageous to them. That was particularly at issue, defendant noted, because the clients were apparently witnesses to the shooting.

¶ 13 The State responded that the affidavit supporting the warrant needed to establish only that, given the totality of the circumstances, it was probable that evidence related to the crime would be found in the vehicle. The State noted that there was no need to corroborate the hearsay in the statement, because Spencer was not dealing with a confidential informant; rather, each person

providing information was identified by name. Further, the particularity of the facts established that: (1) there was a shooting; (2) Nichols and Parker were present before, during, and after the shooting; (3) they saw a firearm being retrieved from the Toyota in the garage prior to the shooting; (4) Nichols was defendant's estranged spouse and a co-owner of the vehicle; and (5) ammunition was previously kept in the Toyota. Accordingly, the State argued that the affidavit sufficiently established probable cause to believe that evidence of the crime would be found in the car.

¶ 14    The trial court denied defendant's motion to quash and suppress. The court noted that the real issue was whether the affidavit established probable cause to believe that a crime had been committed and that, if a search warrant were issued, some evidence of that crime would be found. "We are looking at whether there was fair probability that evidence of a crime would be found in a particular place." The court noted that case law instructs that a court should remember that, as the very name implies, the issue concerns probabilities, and, so, a court should not be too technical and should "keep it simple."

¶ 15    The court looked to the totality of information in the affidavit to determine whether there had existed probable cause to issue a search warrant. Further, the court noted that it would not inject into its analysis matters outside the affidavit and that, therefore, it did not matter that Mahoney was well known by the Carpentersville legal community. In fact, the court announced that, for purposes of its analysis, Mahoney's name could be taken out of the affidavit. It noted that the four corners of the affidavit established that the attorney providing the information to Spencer was "well-known" to him. The parties providing information to Mahoney were both named. Nichols was defendant's estranged wife and a co-owner of the vehicle in question. Before, during, and after the shooting, Nichols and Parker were present at the residence where the shooting occurred, and they had witnessed a gun being retrieved from the Toyota before the shooting. Mahoney told Spencer that ammunition had, in the past, been present in the Toyota. Given the information in the affidavit, "[i]t seems reasonable that the officers would want to and would believe that if they were to have access to that vehicle that there might be some evidence of a crime that they might be able to locate in that car given the totality of the information that they have been provided." The court further noted that, considering all of the information, it was "very reasonable" for Mahoney to give the police the information; the court suggested that, ethically, an attorney would be "expected" to do so. The court found that probable cause had existed for the warrant.

¶ 16                                    C. Trial

¶ 17    Defendant's bench trial commenced April 16, 2012, and proceeded for five days. On May 23, 2012, the court found defendant guilty of first-degree murder. In summarizing the evidence, the court found that numerous witnesses testified to seeing defendant shoot the victim, seeing defendant with a gun, and/or seeing and hearing defendant and the victim argue; moreover, multiple witnesses testified that they did not see the victim with a weapon. Defendant testified on his own behalf and admitted that he retrieved a loaded gun and fired at least four shots at the victim. Defendant argued that he acted in self-defense and that he thought the victim had a gun, but he admitted that he did not see the victim with a gun.

¶ 18    The court found defendant not credible and other witnesses credible. The court noted that the cartridge cases found at the scene were .45-caliber and were all fired from the same weapon. Moreover, it noted that: (1) Parker testified to observing defendant retrieve a

.45-caliber handgun and ammunition from under the hood of the car at 126 Amarillo Drive in Carpentersville; and (2) a police officer testified to finding "in the garage" a case for a .45-caliber handgun, .45-caliber ammunition, a holster, and an owner's manual for a .45-caliber handgun. The court noted that the record was replete with evidence that defendant fired the gun, that defendant and the victim were both upset over money, and that they had been involved in an "unsatisfactory" drug transaction earlier that day. In sum, the court rejected defendant's self-defense argument and found defendant guilty of first-degree murder.

¶ 19    The court sentenced defendant to 55 years' imprisonment (30 years for the murder, plus a 25-year add-on for personally discharging the firearm that caused the victim's death). The court denied defendant's motion to reconsider the sentence. Defendant appeals.

¶ 20                                II. ANALYSIS

¶ 21    Defendant's sole argument on appeal is that the trial court erred in denying his motion to quash the search warrant and to suppress evidence. Defendant argues that the warrant was invalid because the information in the complaint (specifically, the affidavit) was unreliable and failed to establish probable cause for the search. Defendant contends that the information in the affidavit came from hearsay sources, without corroboration or a showing that the declarants were reliable. Defendant notes that Mahoney was not acting as a private citizen but was serving as an advocate for his clients who were present at the shooting, including a registered co-owner of the Toyota. Defendant argues that Mahoney's reliability and motivation for calling the police were questionable, given that: (1) those eyewitnesses could have been involved in the crime; (2) one witness (Parker) was subject to an outstanding arrest warrant and might have supplied information simply to avoid further legal trouble;[1] and (3) we must presume that Mahoney was acting in his clients' best interests. Defendant asserts that a "prudent and reasonable person would view with great suspicion *accusations against a man* coming from the attorney representing the man's estranged wife and her current boyfriend who claimed to be present when a fatal shooting occurred." (Emphasis added.)

¶ 22    The existence of probable cause for a search warrant depends on the totality of the circumstances. *People v. Tisler*, 103 Ill. 2d 226, 237-38 (1984). "A showing of probable cause means that the facts and circumstances within the knowledge of the affiant are sufficient to warrant a person of reasonable caution to believe that an offense has occurred and that evidence of it is at the place to be searched." *People v. Moser*, 356 Ill. App. 3d 900, 908 (2005). As the trial court noted here, the standard for probable cause concerns the *probability* of evidence of criminal activity, *not* a showing of proof beyond a reasonable doubt. *People v. Stewart*, 104 Ill. 2d 463, 475-76 (1984). At a probable cause hearing, the trial court must make a practical, commonsense assessment of whether, given all of the circumstances set forth in the affidavit, there is a fair probability that evidence of a particular crime will be found in a particular place. *People v. Hickey*, 178 Ill. 2d 256, 285 (1997).

¶ 23    We address first defendant's contention that, because the judge issuing the warrant did not hear testimony and there are no facts in dispute, we should consider *de novo* whether the warrant lacked probable cause. We disagree. Generally speaking, where the only issue is whether the complaint and supporting affidavit established probable cause, our analysis is of

---

[1]Defendant notes that Parker testified at trial in exchange for the reduction of his bond, reduction of Class X felony charges to Class 2, and 24 months' probation.

the issuing judge's initial determination of probable cause, not the trial court's assessment thereof on a motion to quash and suppress. *People v. Bryant*, 389 Ill. App. 3d 500, 511 (2009).

> "[W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' [Citation.] 'A grudging or negative attitude by reviewing courts toward warrants,' [citation] is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; 'courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.' [Citation.]
>
> If the affidavits submitted by police officers are subjected to the type of scrutiny some courts have deemed appropriate, police might well resort to warrantless searches, with the hope of relying on consent or some other exception to the Warrant Clause that might develop at the time of the search. *** Reflecting this preference for the warrant process, the traditional standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. [Citations.] We think reaffirmation of this standard better serves the purpose of encouraging recourse to the warrant procedure and is more consistent with our traditional deference to the probable-cause determinations of magistrates ***." *Illinois v. Gates*, 462 U.S. 213, 236-37 (1983).

The reviewing court simply ensures that the magistrate had a substantial basis for concluding that probable cause existed. *Id.* at 236. Thus, if the complaint provided a substantial basis for the issuing judge's probable-cause determination, we will affirm the trial court's denial of a defendant's motion to quash and suppress. See *Stewart*, 104 Ill. 2d at 477-78 (first concluding that the complaint provided the issuing judge a substantial basis for the probable-cause determination and then holding that the trial court's denial of the defendant's motion to suppress was not erroneous); *Bryant*, 389 Ill. App. 3d at 511 (holding that, if the judge issuing the search warrant was correct, then it necessarily followed that the trial court's grant of the defendant's motion to suppress was erroneous).

¶ 24    We acknowledge that defendant correctly notes that other cases have stated that, where the facts and credibility of witnesses are not contested, whether probable cause exists is a legal question reviewed *de novo*. See, *e.g.*, *People v. Sims*, 192 Ill. 2d 592, 615 (2000) (considering probable cause for a warrantless arrest); *People v. Arnold*, 394 Ill. App. 3d 63, 68 (2009) (considering probable cause for a warrantless arrest and reviewing *de novo* the trial court's ruling on the motion to suppress); *People v. Cooke*, 299 Ill. App. 3d 273, 277-78 (1998) (reviewing *de novo* the trial court's ruling on the motion to suppress, but arguably applying *Gates*' totality-of-circumstances analysis in reviewing issuing judge's probable-cause determination). Ultimately, whether we apply a deferential standard of review or, as defendant urges, *de novo* review, we conclude that the complaint and affidavit provided a sufficient basis such that, given the totality of the circumstances, there was a reasonable probability that evidence of a crime would be found in the vehicle specified in the search warrant.

¶ 25    Here, defendant's primary argument is that the "tip" was not reliable, because it was provided by an attorney who was speaking on behalf of his clients, who might have been involved in the crime or had motives to protect themselves. We disagree. There is nothing in the record before us to suggest that Mahoney's status as an attorney necessarily rendered him,

or the information he provided to the police, more or less reliable than any other named informant. Rather, as in any probable-cause determination, the inquiry was simply whether, given the totality of the information provided in the complaint and affidavit, it was probable that evidence of a crime would be found in the vehicle. That Mahoney hypothetically could have "filtered" it did not render the information that *was* provided inherently unreliable. We note that all three individuals from whom the information was derived were identified by name in the affidavit, which enhanced the reliability of the tip (see, *e.g.*, *Bryant*, 389 Ill. App. 3d at 518), and, further, that the officer knew the person providing the tip (*i.e.*, Mahoney).

¶ 26        Although the affidavit did not expressly state that the officer corroborated the information provided by Mahoney's clients, the complaint and affidavit together allowed for a reasonable inference thereof. Specifically, Mahoney told Spencer that Nichols was defendant's estranged wife, that defendant lived at 126 Amarillo Drive, and that, prior to the shooting, defendant removed a handgun from a Toyota in the garage at that address. The affidavit then corroborated Nichols' information by specifying that, in fact, a 1986 Toyota was located in the garage at 126 Amarillo Drive and "appears" as though it had not been driven in a while (suggesting that the existence and location of the vehicle were verified and, further, that the vehicle would likely still be there when the search warrant was executed). Further, the affidavit provided the vehicle's color, 17-digit identification number, and 7-digit registration number and, critically, the fact that the vehicle "is registered" to both Nichols and defendant. Indeed, the complaint asserted that the vehicle "registers" to Nichols and defendant, which suggested that Spencer corroborated both Mahoney's and Nichols' reliability by searching the vehicle's registration records. Even if he did not, and if the vehicle registration and identification numbers were provided solely by Nichols, that detail only adds to the specificity and reliability of the tip. Accordingly, because the affidavit provided information that explained the basis of Nichols' and Parker's information (and thereby Mahoney's information), this case is different from *People v. Wilson*, 260 Ill. App. 3d 364 (1994), upon which defendant relies, where the victim provided information from his daughter, but the police did not know the basis of the daughter's knowledge. See also *People v. Smith*, 372 Ill. App. 3d 179, 184 (2007) (issuing magistrate determines whether there is a fair probability that evidence of a crime will be found by considering all circumstances, including the basis of knowledge of persons supplying hearsay information).

¶ 27        We reject defendant's suggestion that a "prudent and reasonable person would view with great suspicion *accusations against a man* coming from the attorney representing the man's estranged wife and her current boyfriend who claimed to be present when a fatal shooting occurred." (Emphasis added.) As noted during the suppression hearing, the issue facing the magistrate was not, specifically, whether *defendant* committed a crime. Rather, the question was whether a practical, commonsense assessment of the circumstances set forth in the complaint and affidavit showed that there existed a fair or reasonable probability that *evidence of a crime* would be found in a particular place. *Hickey*, 178 Ill. 2d at 285. Here, the totality of the circumstances provided by the affidavit reflected that: (1) Mahoney was "well-known" to Spencer; (2) there was a fatal shooting at 126 Amarillo Drive; (3) Nichols and Parker were present before, during, and after that shooting; (4) Nichols and defendant were estranged spouses; (5) before the shooting, defendant took a handgun from a Toyota that was in the garage at that address; and (6) that vehicle was, specifically, "a 1986 Toyota 4 door, grey in color, with Illinois registration 591 3440. The vehicle register[ed] to Barbara Nichols and

[defendant]. The vehicle identification number on the vehicle is JT2SV16H9G0515191." Accordingly, given the combination of named, known informants who were present at the address and knew that defendant took a handgun from the Toyota, coupled with the specificity of the vehicle to be searched, which also corroborated one informant's relationships with both defendant and the vehicle, the information sufficiently created a fair or reasonable probability that evidence of a crime would be found in the vehicle. We are not convinced that, when they conveyed information to Mahoney, Nichols' or Parker's possible ulterior motives (or even Mahoney's) rendered the information inherently unreliable. Again, the inquiry was simply whether, given the totality of the information, it was probable that evidence of a crime would be found in the vehicle. In any event, we note again that, "although it may not be easy to determine when an affidavit demonstrates probable cause, doubtful or marginal cases are largely resolved by resorting to the preference accorded to warrants." *People v. Beck*, 306 Ill. App. 3d 172, 179 (1999). As such, we reject defendant's argument that the warrant lacked probable cause and affirm the trial court's denial of his motion to quash and suppress.

¶ 28 Given that we have rejected defendant's probable-cause argument, we need not address the State's alternative argument that the good-faith exception to the exclusionary rule applies to prevent suppression. We do, however, agree with the State that, even if the court should have granted the motion to quash and suppress, any error was harmless and defendant's conviction must be affirmed. The improper admission of evidence is harmless where there is no reasonable probability that, if the evidence had been excluded, the outcome would have been different. *People v. Lindsey*, 2013 IL App (3d) 100625, ¶ 39. "When deciding whether error is harmless, a reviewing court may (1) focus on the error to determine whether it might have contributed to the conviction; (2) examine the other properly admitted evidence to determine whether it overwhelmingly supports the conviction; or (3) determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence." *In re Rolandis G.*, 232 Ill. 2d 13, 43 (2008).

¶ 29 Here, there is no reasonable probability that, if the evidence found in the Toyota had been excluded, the result would have been different. The trial court's ruling reflects that the evidence found upon execution of the search warrant contributed very little to the conviction. In any event, the other evidence overwhelmingly supports the conviction. Indeed, defendant admitted to shooting and killing the victim; the issue was simply whether defendant acted in self-defense. Given that several witnesses testified at trial to seeing defendant with a gun and/or shoot the victim, we disagree that there is a fair chance that, if the evidence from the vehicle had been excluded, the result might have differed.

¶ 30                                        III. CONCLUSION
¶ 31 For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 32 Affirmed.