NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 170237-U

NO. 4-17-0237

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 13, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| MELISSA SUE DOUGHERTY, | ) | No. 16CM1404 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Lee Ann Hill, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court reversed where other-crimes evidence was inadmissible and the error was not harmless.

¶ 2    Following a January 2017 jury trial, defendant, Melissa Sue Dougherty, was found guilty of theft (720 ILCS 5/16-1(a)(1)(C) (West 2014)). In March 2017, the trial court sentenced defendant to 18 months of court supervision and ordered her to pay a $100 fine and restitution in the amount of $19.60.

¶ 3    Defendant appeals, arguing (1) the trial court erred by admitting improper propensity evidence and the error was not harmless, (2) the trial court failed to properly admonish the jury during *voir dire* and the evidence was closely balanced, and (3) she received

ineffective assistance of counsel when her counsel failed to object to the State's evidence which lacked a proper foundation. We reverse and remand for a new trial.

¶ 4                                    I. BACKGROUND

¶ 5         On August 12, 2016, the State charged defendant by information with theft (720 ILCS 5/16-1(a)(1)(C) (West 2014)). At some later time, the State amended the charge to allege defendant "committed the offense of theft by knowingly obtained unauthorized control over Kroger's property, and used the property knowing that such use probably would deprive the owner permanently of such use or benefit, by conducting fraudulent refunds when no customers were present."

¶ 6         On January 9, 2017, defendant's jury trial commenced. During *voir dire*, the trial court questioned all potential jurors regarding certain principles of law applicable to criminal prosecutions. The court admonished the venire as follows:

           "THE COURT: All right. I talked to you a little bit earlier about the

           burden of proof here today. I'm going to read some of the core principles of our

           justice system in the criminal law area. I'm going to ask—first I'm going to read

           them and then I'll read each principle individually and if anybody has any issues

           with that principle I'll ask that you, please, raise your hand.

           The defendant is presumed to be innocent of the charges against her. This

           presumption remains with her throughout every stage of the trial and during your

           deliberations on the verdict and it is not overcome unless from all the evidence in

           the case you are convinced beyond a reasonable doubt that the defendant is guilty.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt and this burden remains on the State throughout the case. The defendant is not required to prove their innocence.

Does anyone have an issue with the presumption of innocence that remains with the defendant throughout the trial?

Does anyone have any difficulty with the State maintaining the burden of proof beyond a reasonable doubt?

Do you understand and accept the defendant is not required to prove their innocence?

And do you understand that a defendant is not required—does not have to testify in this case? Does anyone have any difficulty with any of those principles of law?"

The court then engaged in a colloquy with several prospective jurors individually before stating the following:

"THE COURT: Thank you very much.

Show no other hands in the gallery."

¶ 7                    A. Testimony of Devin Moore-Eppinger

¶ 8        At trial, Devin Moore-Eppinger testified that he is a loss prevention specialist for Kroger. Moore-Eppinger stated that the Kroger Fuel Center (Fuel Center) was located adjacent to the Kroger grocery store on College Street in Normal, Illinois. The Fuel Center is a small building with one employee working inside. A glass panel separates the employee from customers, and items for sale are scanned and passed through a tray under the window.

¶ 9          In June 2016, Moore-Eppinger began investigating defendant, a Kroger employee, for "abnormal" transactions. Moore-Eppinger testified about an exhibit reflecting "cash refunds that were done by [defendant]," and which included "[t]he register number, the employee using the register, the date, time, the merchandise scanned, and the total of the transaction." Moore-Eppinger stated "we can go through and look for any abnormal transactions that are reported as fraudulent[.]" Moore-Eppinger compared the cash refunds exhibit with video surveillance footage of the Fuel Center. Moore-Eppinger testified that the video surveillance recorded "24/7" and displayed a time stamp that allowed the video surveillance footage to be matched to the "abnormal" transactions. The video surveillance recorded the register, the window, and the area where a customer would stand during a transaction.

¶ 10         Moore-Eppinger identified three cash refund transactions by defendant as follows: (1) on July 2, 2016, a return of cleaning wipes, Cheetos, and Powerade; (2) on June 5, 2016, a return of Pennzoil 5W-30 motor oil; and (3) on May 24, 2016, a return of Newport menthol cigarettes and a Fiji Water. Moore-Eppinger testified the surveillance footage and corresponding business records showed defendant processed cash refunds at the Fuel Center when no customer was present. The State then played for the jury the surveillance footage corresponding with each transaction.

¶ 11         On July 13, 2006, Moore-Eppinger interviewed defendant at the Kroger store regarding the three cash refund transactions. Moore-Eppinger testified defendant was "approached about the transactions in which there was no customer present, was asked why. From there she was shown the video and unable to provide an explanation."

¶ 12      On cross-examination, Moore-Eppinger admitted the video footage did not show defendant taking cash from the Fuel Center. He testified cash deposits were made in a safe in the Fuel Center but the surveillance cameras did not show the safe.

¶ 13                    B. Testimony of Officer Melissa Zabukovec

¶ 14      Normal police officer Melissa Zabukovec testified she was dispatched to Kroger on July 13, 2016, "for a theft report." She met with the loss prevention officer, store manager, another employee, and defendant in a room at the Kroger grocery store. According to Officer Zabukovec, defendant denied any wrongdoing and was very upset. Officer Zabukovec and the loss prevention officer stepped out of the room. The loss prevention officer told Officer Zabukovec that he "was tipped off that [defendant] was stealing, so he used their computer software and video surveillance to investigate it." Based on her conversation with the loss prevention officer, Officer Zabukovec arrested defendant.

¶ 15      Officer Zabukovec placed defendant in her patrol car, which was equipped with a video recorder. The State played portions of the video from the patrol car for the jury. In the video clip, defendant stated she told the Kroger employees she should be sent home or taken to jail and that jail was "a little vacation, I'll get three meals a day and I'll have hot water." Defendant further explained that she did not currently have hot water at her home as she couldn't afford her gas bill. Later in the video clip, defendant stated she had thought about quitting her job two weeks earlier.

¶ 16      After the video was played, defense counsel objected to it on the basis of relevance, arguing the video was "not probative of anything in this case" and was being offered to show defendant was poor and therefore had a motive to steal. The court overruled the objection. The State then asked Officer Zabukovec if defendant mentioned her financial

situation. Officer Zabukovec testified defendant "said that she didn't need to steal because she had received an inheritance from her father. But she also said that she wasn't able to pay her natural gas bill."

¶ 17　　　　On cross-examination, Officer Zabukovec testified defendant did not waver in her denial of "committing this offense."

¶ 18　　　　　　　　　　　C. Testimony of Defendant

¶ 19　　　　Defendant testified the three two-minute video clips showed her completing cash refund transactions. She testified she completed refund transactions "after the customers would leave because I was busy and I was the only one out there." As a line of customers formed, defendant refunded cash to the customers who were returning items and processed the return after the line cleared.

¶ 20　　　　On cross-examination, defendant testified she used a small calculator next to the cash register to calculate the cash refunds. The Fuel Center register allowed multiple transactions to be open at once because of the multiple fuel pumps. Defendant did not know if her method of processing returns was consistent with Kroger policy. She admitted she violated company policy by completing her own transaction when purchasing a lottery ticket.

¶ 21　　　　Defendant testified she mentioned her natural gas being shut off to the officer because she was concerned about having just lost her job and therefore having no way to pay the bill. She explained her statement about jail being "a little vacation" meant she "wouldn't have to worry about the life that [she has] right now." Defendant stated she did not steal from Kroger and would not jeopardize her life by stealing. Further, defendant stated she had never stolen before and had no reason to steal.

¶ 22     Over defense counsel's objection, the trial court allowed the State to replay the surveillance videos. The State also requested it be allowed to cross-examine defendant regarding statements she made in the patrol car that she had once changed a Vicodin prescription because she "just wanted to see if [she] could get away with it." Defense counsel objected to the statement as being improper propensity evidence. The court overruled defense counsel's objections.

¶ 23     The State replayed clips from the surveillance footage, including video showing defendant with items for which she processed returns and purchasing her own lottery ticket. Defendant denied leaving the area to obtain the items processed in the returns. Defendant admitted to violating Kroger policy by processing her own lottery transaction, but stated she did so because she was alone in the Fuel Center and used her own money for the purchase. On redirect, defendant explained she placed returned items on a desk in the Fuel Center to process later and that is why the video showed her going further into the store to retrieve items before processing the returns. Defendant also clarified she was at no point seen taking money from the cash register for returns because she had already given the money to the customer returning the item.

¶ 24     Upon questioning by the State, defendant admitted she had been in trouble with the police when she was 18 years old for changing information on a prescription and agreed the reason she gave at the time was "just to see if [she] could get away with it." On redirect, defendant testified the incident involved the alteration of a Vicodin prescription and occurred approximately 20 years before. Defendant testified she had not been in trouble with the law before or since that incident. Defendant also testified she would not steal from her employer to

pay a bill "[b]ecause why would I steal one time to pay a bill when the bills are due every month? And now I have no job to pay any of my bills."

¶ 25                              D. Rebuttal Testimony of Devin Moore-Eppinger

¶ 26        On rebuttal, Moore-Eppinger confirmed Kroger employees are not allowed to process their own transactions. He further testified Kroger does not permit returns to be processed without the customer present. Moore-Eppinger admitted the Fuel Center does have the unique ability to process more than one transaction at a time but the Kroger policy for processing returns also applies for returns at the Fuel Center.

¶ 27        Following closing arguments, the jury found defendant guilty of theft.

¶ 28        Defendant filed a motion for a new trial, asserting the trial court erred in allowing the State to introduce defendant's statement that she had altered a Vicodin prescription some 20 years earlier. Specifically, defense counsel argued the trial court erred by allowing defendant's statement that she altered the prescription "just for shits and giggles." The trial court denied the motion and stated, in part, as follows:

> "THE COURT: [Defendant] put the issue when she testified and testified that she had no reason to steal, even though those statements came in through the officer also, but [defendant] chose to take the stand. And when she took the stand, she put her unsolicited statement at issue, whether there needed to be a motive, or whether there was a motive. State doesn't have to prove motive. So it didn't matter whether there was any motive for her to steal or there wasn't because in the past she has made a dishonest or fraudulent transaction just for shits and giggles, or because she wanted to see if she could get away with it."

¶ 29     The trial court sentenced defendant to 18 months' court supervision and ordered defendant to pay a $100 fine and restitution in the amount of $19.60.

¶ 30     This appeal followed.

¶ 31                                II. ANALYSIS

¶ 32     On appeal, defendant argues (1) the trial court erred by admitting improper propensity evidence and the error was not harmless, (2) the trial court failed to properly admonish the jury during *voir dire* and the evidence was closely balanced, and (3) she received ineffective assistance of counsel where her counsel failed to object to the State's evidence which lacked a proper foundation.

¶ 33     Defendant first argues the trial court erred by allowing the State to question defendant regarding her statement that she had altered a Vicodin prescription 20 years earlier. Defendant argues that the statement was inadmissible where it was "highly prejudicial" and "allowed the jury to speculate that [defendant] had a propensity to break the law." We agree.

¶ 34     "Evidence of other crimes is inadmissible if it is relevant merely to show a defendant's propensity to commit crime. [Citation.] However, this evidence may be properly admitted when it is relevant to prove a defendant's motive to commit the crime for which [s]he is being tried." *People v. Moss*, 205 Ill. 2d 139, 156, 792 N.E.2d 1217, 1227 (2001). "Even if offered for a permissible purpose, such [other-crimes] evidence will not be admitted if its prejudicial effect substantially outweighs its probative value." *People v. Dabbs*, 239 Ill. 2d 277, 284, 940 N.E.2d 1088, 1093 (2010). The admissibility of other-crimes evidence is within the sound discretion of the trial court, and its determination will not be set aside absent a clear abuse of discretion. *Id.*

¶ 35 Here, we find the trial court erred in admitting defendant's statement from the patrol car video that she had altered a Vicodin prescription 20 years before. The State in its brief argues "[t]he trial court ruled that defendant's testimony put at issue defendant's 'unsolicited statement' to police about 'whether or not there needed to be a motive' because she made a prior fraudulent transaction 'to see if she could get away with it.' [Citation.] Thus, the evidence of other misconduct was relevant for a purpose other than to show propensity to commit a crime." However, defendant's prior conduct did not establish a motive for her to steal, nor did it bear any resemblance to the conduct at issue in this case. Further, it was so remote in time that it otherwise possessed no probative value. We reject the notion that a defendant's prior commission of a crime just to see if she could "get away with it" is somehow probative of her alleged commission of a dissimilar crime 20 years later. In view of the lack of probativeness, and in light of its highly prejudicial nature, we find the trial court erred in admitting the improper propensity evidence.

¶ 36 We next determine whether the error was harmless beyond a reasonable doubt. "The improper admission of evidence is harmless where there is no reasonable probability that, if the evidence had been excluded, the outcome would have been different." *People v. Brown*, 2014 IL App (2d) 121167, ¶ 28, 11 N.E.3d 882. "When deciding whether error is harmless, a reviewing court may (1) focus on the error to determine whether it might have contributed to the conviction; (2) examine the other properly admitted evidence to determine whether it overwhelmingly supports the conviction; or (3) determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence." *In re Rolandis G.*, 232 Ill. 2d 13, 43, 902 N.E.2d 600, 617 (2008)

¶ 37 Here, the evidence of defendant's prior bad act was not cumulative or duplicative of properly admitted evidence. Further, the other evidence presented did not overwhelmingly support defendant's conviction. The State presented video evidence and corresponding testimony that defendant violated Kroger policy by refunding items when customers were not present. However, the State did not present any evidence demonstrating Kroger was actually deprived of any money or goods, nor that defendant exerted unauthorized control over Kroger's goods. Further, defendant provided testimony detailing her actions as consistent with the surveillance footage. We cannot conclude that the admission of the inflammatory other-crimes evidence was harmless. Therefore, we reverse defendant's theft conviction and remand for a new trial. Given our decision, we need not address defendant's remaining issues.

¶ 38                                    III. CONCLUSION

¶ 39 For the reasons stated, we reverse defendant's conviction and sentence and remand for a new trial.

¶ 40 Reversed; cause remanded.