NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190793-U

NO. 4-19-0793

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 2, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| SHANAYA U. NETTER, | ) | No. 18CF1508 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Roger B. Webber, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Knecht and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed, finding that the admission of other-crimes evidence, even if erroneous, was harmless.

¶ 2        On September 24, 2019, following a jury trial, defendant, Shanaya U. Netter, was found guilty of aggravated battery (720 ILCS 5/12-3.05(d)(4)(i) (West 2016)). Defendant appeals, arguing the trial court committed reversible error in admitting certain other-crimes evidence. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        On October 29, 2018, the State charged defendant with resisting a peace officer (*id.* § 31-1(a-7)) and aggravated battery (*id.* § 12-3.05(d)(4)(i)). Defendant's case proceeded to a jury trial.

¶ 5          Prior to defendant's trial, defendant filed a motion *in limine* to bar the admission of portions of a police report and of police body camera footage related to her arrest. Defendant claimed this evidence "describe[d] and show[ed] the aftermath of an act that if presented to the [j]ury would be extremely prejudicial, to wit: that [defendant] destroyed a chair prior to the officer arriving on the scene, parts of which are observable in the driveway of the home where she resided." Defendant claimed evidence of this "bad act" had "no logical connection with the instant charges" and would only be admitted to "show [defendant's] propensity to commit crime." Defendant further claimed the probative value of the evidence related to the broken chair was "substantially outweighed by its danger of unfair prejudice."

¶ 6          On the day of defendant's trial, prior to jury selection, the trial court heard defendant's motion *in limine*. At the hearing, the State argued the police body camera video showed that defendant admitted to breaking the chair and that this evidence was relevant to her mental state because it demonstrated she was "acting in an aggressive manner." Defense counsel disagreed, arguing the State was using the evidence to "backdoor propensity." The court ultimately denied defendant's motion, finding the evidence was admissible to prove defendant's state of mind.

¶ 7          The State's sole witness at defendant's trial was Officer Timothy Rivest of the Champaign Police Department, who testified as follows. At around 1 a.m. on October 29, 2018, Officer Rivest was dispatched to a residence in Champaign to perform a welfare check. When Officer Rivest arrived, he saw "numerous plastic pieces" in the driveway of the residence. He also observed defendant standing between the home's security door and screen door and ringing the doorbell "incessantly." According to Officer Rivest, he approached defendant and inquired about the debris in the driveway. In response, defendant told him that "the debris was a plastic chair she

had broken." Officer Rivest then asked defendant what she was doing, and defendant replied she had been locked out of her house by her grandparents, with whom she lived. Eventually, defendant's grandfather opened the security door and stood in the threshold of the residence, barring defendant's access to the house. Officer Rivest testified that defendant's grandfather stated defendant was not allowed in the home because she "had not been following the rules." Defendant then began to argue with her grandfather but eventually said she would leave if she could have her cell phone charger and her shoes. Defendant's grandfather agreed to give her these items and began to move away from the front door. At that point, defendant "pushed the door open and ran inside the house," and she and her grandfather "immediately got into a physical altercation." Officer Rivest testified that he then entered the home where he observed defendant kicking at her grandfather. Officer Rivest told defendant to stop kicking at her grandfather and grabbed her wrists to handcuff her. Defendant then started yelling at Officer Rivest that he "could not put her in handcuffs" and pulled away from him. Defendant tried to move further into the house but fell to the floor. Officer Rivest approached defendant, who began kicking him in the chest, making contact "two to three" times and knocking his body camera off his uniform. Officer Rivest again tried to handcuff defendant, but she "refused to put her hands behind her back" and was able to return to her feet and move further into the home before she again fell over. Officer Rivest stood over defendant who started "flailing" and "kicking her legs," striking Officer Rivest multiple times. One of the times defendant kicked Officer Rivest, she struck him in the groin, causing him to fall to his knees. Officer Rivest then managed to grab defendant's arm and put it into a "gooseneck hold." At this point, defendant "verbally said that she was conceding and was going to allow [Officer Rivest] to secure her in handcuffs," which he did. According to Officer Rivest, his struggle with defendant lasted approximately one minute. As a result of the struggle, Officer

Rivest had pain in two of his knuckles. He also had pain in his left testicle for about a day and a half after defendant kicked him in the groin.

¶ 8        The State also presented video from Officer Rivest's body camera, which was largely consistent with Officer Rivest's testimony. The video shows that, as Officer Rivest approached defendant and asked about the plastic debris in the driveway, defendant responded "That's the chair. It broke." The video also shows that after Officer Rivest entered the house and tried to separate defendant from her grandfather, she yelled, "No, you can't," and moved away from Officer Rivest and further into the residence, yelling, among other things, "Do not put your hands on me." After defendant kicked Officer Rivest's body camera off his uniform, defendant and Officer Rivest moved into a different room in the house, and the video no longer recorded the struggle between the two, but defendant can be heard yelling, "Move," and "You cannot punch me," and Officer Rivest can be heard yelling, "Put your hands behind your back," and "Do it now." In response to Officer Rivest's commands, defendant can be heard yelling, "I can't get over," "I can't breathe," and, finally, "I said you could handcuff me."

¶ 9        Defendant presented no evidence.

¶ 10        The jury ultimately found defendant guilty of aggravated battery and not guilty of resisting a peace officer.

¶ 11        Defendant filed a motion for new trial claiming, as relevant to this appeal, that the trial court erred in denying her motion *in limine* and admitting evidence that she broke a chair in her grandparents' driveway before Officer Rivest arrived. The court denied defendant's motion.

¶ 12        At a subsequent sentencing hearing, the trial court sentenced defendant to 30 months' probation.

¶ 13        This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15            On appeal, defendant argues the trial court committed reversible error in admitting other-crimes evidence. Specifically, defendant claims admission of evidence that she broke a chair before Officer Rivest arrived at her grandparents' home was improper because: (1) there was insufficient evidence to show that she broke the chair, (2) the only purpose in admitting the evidence was to show her propensity to be violent, and (3) the probative value of the evidence was substantially outweighed by its prejudicial effect. We affirm defendant's conviction because even assuming, *arguendo*, that the court erred in admitting evidence that defendant broke a chair, its admission was harmless.

¶ 16            "Evidence of other crimes is admissible if it is relevant for any purpose other than to show the defendant's propensity to commit crime. [Citation.] Other-crimes evidence is admissible to show *modus operandi*, intent, motive, identity, or absence of mistake with respect to the crime with which the defendant is charged." *People v. Pikes*, 2013 IL 115171, ¶ 11, 998 N.E.2d 1247. Even if offered for a permissible purpose, other-crimes evidence will not be admitted unless the State first shows that "a crime took place and that the defendant committed it or participated in its commission" (*id.* ¶ 15), nor will other-crimes evidence be admitted if "its prejudicial effect substantially outweighs its probative value." *People v. Dabbs*, 239 Ill. 2d 277, 284, 940 N.E.2d 1088, 1093 (2010). "The admissibility of evidence rests within the discretion of the trial court, and its decision will not be disturbed absent an abuse of that discretion." *Pikes*, 2013 IL 115171, ¶ 12.

¶ 17            "The erroneous admission of other-crimes evidence carries a high risk of prejudice and will ordinarily require reversal if the erroneously admitted evidence was so prejudicial as to deny the defendant a fair trial ***[.]" (Internal quotation marks omitted.) *People v. Smith*, 2019 IL App (4th) 160641, ¶ 58, 141 N.E.3d 688. "The improper admission of evidence is harmless where

there is no reasonable probability that, if the evidence had been excluded, the outcome would have been different." *People v. Brown*, 2014 IL App (2d) 121167, ¶ 28, 11 N.E.3d 882. In determining whether the erroneous admission of evidence is harmless, a reviewing court may: "(1) focus on the error to determine whether it might have contributed to the conviction; (2) examine the other properly admitted evidence to determine whether it overwhelmingly supports the conviction; or (3) determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence." *People v. Becker*, 239 Ill. 2d 215, 240, 940 N.E.2d 1131, 1145 (2010).

¶ 18 Here, we find the jury's consideration of evidence that defendant broke a chair before Officer Rivest arrived at her grandparents' home, even if erroneous, was harmless and find defendant's argument otherwise is meritless. Defendant claims that at her trial the State was required to prove she "knowingly caused bodily harm to Officer [Rivest]" and that the only evidence she caused bodily harm to Officer Rivest was his testimony that she kicked him in the groin, causing pain to his left testicle. Defendant continues that Officer Rivest's body camera video demonstrates that, just before she kicked Officer Rivest in the groin, defendant stated, "I can't get over" and, "I said you could handcuff me," which she argues indicates that she "accidentally kicked [Officer] Rivest while she was struggling to follow his orders to turn over on her back." Defendant concludes that, without the evidence of the broken chair, the State's evidence that she knowingly kicked Officer Rivest in the groin, causing him bodily harm, was "anything but overwhelming."

¶ 19 As an initial matter, defendant's assertion the State was required to prove that she caused "bodily injury" to Officer Rivest to sustain a conviction for aggravated battery is erroneous. A person commits aggravated battery when, in committing a battery, she knows the individual

being battered to be a peace officer performing his official duties. 720 ILCS 5/12-3.05(d)(4)(i) (West 2016). A person commits battery when she "knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." *Id.* § 12-3(a). Thus, under the plain language of the statute, the State was not required to show defendant caused bodily harm to Officer Rivest but instead could prove she committed aggravated battery by showing she knowingly made contact with Officer Rivest that was of an insulting or provoking nature. At defendant's trial, the State proceeded on a theory that defendant's contacts with Officer Rivest were of an insulting or provoking nature. The jury was instructed that, to sustain the charge of aggravated battery, the State was required to prove that "defendant knowingly made physical contact of an insulting or provoking nature with [Officer] Rivest." The jury was not instructed that it could find defendant committed aggravated battery if it found she caused Officer Rivest bodily injury. Therefore, the jury could have found defendant guilty of aggravated battery based upon any of the multiple times she kicked Officer Rivest, not just based upon the specific kick that injured him. This is because the insulting or provoking nature element of the offense does not require explicit testimony either that the victim was injured by the contact or even that the victim was insulted or provoked by the contact. *People v. Nichols*, 2012 IL App (4th) 110519, ¶ 42, 979 N.E.2d 1002; *People v. DeRosario*, 397 Ill. App. 3d 332, 334, 921 N.E.2d 753, 755 (2009). Instead, whether a contact was of an insulting or provoking nature depends upon "the factual context in which it occurs." (Internal quotation marks omitted.) *People v. Peck*, 260 Ill. App. 3d 812, 814, 633 N.E.2d 222, 223 (1994).

¶ 20        Based on the record, we find that, even without the evidence related to the broken chair, the State's evidence that defendant made physical contact with Officer Rivest which was of an insulting or provoking nature, by knowingly kicking him, was overwhelming. A defendant acts

knowingly when she is "consciously aware" that her conduct is "practically certain" to cause a certain result. 720 ILCS 5/4-5(b) (West 2016). "[A] defendant's mental state may be inferred from the surrounding circumstances, including the character of the defendant's acts and the nature of the victim's injuries." *People v. Nibbe*, 2016 IL App (4th) 140363, ¶ 26, 48 N.E.3d 835. Here, even without the evidence that defendant broke the chair, the undisputed testimony presented at defendant's trial demonstrated that she was highly agitated before the struggle between her and Officer Rivest began. Defendant was ringing the doorbell to her grandparents' home "incessantly," she forced her way into her grandparents' home, and she engaged in a "physical altercation" with her grandfather. Once Officer Rivest tried to separate defendant from her grandfather and to handcuff defendant, she became belligerent; she yelled at Officer Rivest that he could not touch her and pulled away from his grip to prevent him from restraining her. A struggle between Officer Rivest and defendant ensued during which, within the space of a minute, she kicked Officer Rivest multiple times on two different occasions. Defendant only stopped struggling once Officer Rivest placed her in a restrictive hold, at which time she finally became compliant and allowed Officer Rivest to handcuff her. The evidence overwhelmingly demonstrates that defendant kicked Officer Rivest multiple times in order to prevent him from handcuffing her, which a jury could reasonably find was knowing conduct that involved physical contact of an insulting or provoking nature. Thus, we find the trial court's admission of the broken-chair evidence was harmless.

¶ 21                                    III. CONCLUSION

¶ 22          For the reasons stated above, we affirm the trial court's judgment.

¶ 23          Affirmed.